RESCRIPT OPINIONS.

UNIFORMED FIREFIGHTERS OF LUDLOW, LOCAL 1840, & another[1] vs.
BOARD OF SELECTMEN OF LUDLOW. No. 89-P-575. July 18, 1990. *Admin-
istrative Law*, Exhaustion of remedies, Primary jurisdiction. *Labor*,
Firefighters, Health benefit plan. *Municipal Corporations*, Group insur-
ance. *Insurance*, Group, Health care organization.

The plaintiffs in this Superior Court action are a firefighter in the town
of Ludlow, claiming to represent a class of similarly situated Ludlow
firefighters, and their union. On September 14, 1988, the plaintiffs filed a
complaint against the Ludlow selectmen based upon a change, which took
effect on July 1, 1988, in Ludlow's plan to provide its employees with
health insurance under G. L. c. 32B, § 7.[2] Before the change was adopted,
Ludlow employees were offered three health care options: Blue Cross Blue
Shield insurance and membership in one of two health maintenance orga-
nizations (HMO's), Medical West (owned by Blue Cross Blue Shield) and
Health New England. The new plan, by eliminating the Health New Eng-
land HMO option and equalizing, or "melding," the premiums for Blue
Cross Blue Shield coverage with the cost of membership in the Medical
West HMO, significantly increased the amount some Ludlow firefighters
were required to pay for health care. In their complaint, the plaintiffs al-
leged that the new plan violated their rights, first, under G. L. c. 32B, §§ 3
and 16[3] and, second, under St. 1988, c. 23, § 77A.[4] The first claim relates

---

[1]John Mattot, individually and on behalf of a class of persons similarly situated.
[2]For a discussion of the history and purpose of G. L. c. 32B, see *Hemman* v.
*Harvard Community Health Plan, Inc.*, 18 Mass. App. Ct. 70 (1984).
[3]General Laws c. 32B, § 3, authorizes municipalities to offer health insurance to
their employees. Towns are permitted by G. L. c. 32B, § 16, to offer HMO member-
ship as an alternative to health insurance. At the time Ludlow instituted its plan, in
July of 1988, § 16 provided, in relevant part:

"The governmental unit's contribution toward the total monthly premium
cost or rate for coverage under this section shall be the same amount as and
shall not exceed the governmental unit's contribution for the health insurance
programs provided under sections three, five and eleven C [of G. L. c. 32B], .
. . and the eligible persons, having elected coverage under this section . . .
shall pay the remainder of the total monthly premium cost or rate."

The statute has since been amended by St. 1989, c. 653, § 37 (effective July 1,
1990), which sets the employee contribution rate at a minimum of ten percent of the
HMO premium, and permits parties to agree through collective bargaining to a
higher rate up to fifty percent.

to the validity of the formula used to determine the HMO rate, particularly as it was based upon a "melding" with the Blue Cross Blue Shield rate. The second claim relates to the increased cost of HMO membership after April 21, 1988, the effective date of a legislatively-mandated rate freeze. The plaintiffs sought declaratory and injunctive relief as well as compensation for excess premiums paid.

The defendants moved to dismiss the complaint on the ground that the plaintiffs had failed to exhaust their administrative remedies before the Labor Relations Commission (commission). On June 2, 1988, the union had, in a proceeding before the commission, charged the town with a prohibited practice under G. L. c. 150E, § 10(a)(1) & (5). The union had alleged that Ludlow's unilateral adoption of the change in the health care plan constituted a failure to bargain in good faith. On November 7, 1988, the commission issued a formal complaint against the town. The matter was pending before the commission when the motion to dismiss the Superior Court complaint was heard and was still pending at the time of oral argument in this court. Based upon the relationship between this case and the commission proceeding, the possibility of conflicting determinations, and considerations of judicial economy, the judge allowed the motion to dismiss the Superior Court complaint.

Aggrieved parties are generally, but not always, required to exhaust their administrative remedies before resorting to litigation. See *Murphy* v. *Administrator of the Div. of Personnel Admn.*, 377 Mass. 217, 220 (1979); *Stock* v. *Massachusetts Hosp. Sch.*, 392 Mass. 205, 210-213 (1984); *Barksdale* v. *Director of the Div. of Employment Sec.*, 397 Mass. 49, 52-53 (1986). Underlying the exhaustion rule is a recognition of the importance of avoiding judicial interference with the exercise by an administrative agency of the authority entrusted to it by the Legislature. See *St. Luke's Hosp.* v. *Labor Relations Commn.*, 320 Mass. 467, 470 (1946). Where resolution of an issue requires fact finding and the application of an agency's expertise, the agency should first decide the issue. See *Leahy* v.

---

[4]Statute 1988, c. 23, § 77A (added by St. 1988, c. 29, § 3), commonly known as the "Anti-Rollback Law," provides, in relevant part:

"[A] health benefit plan . . . may not require an employee to pay a premium percentage, deductible or coinsurance amount which is greater tha[n] the premium percentage, deductible or coinsurance amount required to be paid by the employee under the plan in effect when [G. L. c. 118F] became effective; provided, however, that a health plan . . . shall provide benefits which are no less than the benefits provided under the plan in effect . . . . [N]othing in this section shall preclude the parties to a collective bargaining agreement . . . from agreeing to any change in the premium percentage, deductible, or coinsurance amount which an employee is required to pay or to a change in benefits provided."

The Legislature repealed the Anti-Rollback Law's application to the provisions of G. L. c. 32B, § 16, which set the contribution rate for HMO coverage. St. 1989, c. 653, § 218.

*Local 1526, American Fedn. of State, County and Mun. Employees*, 399 Mass. 341, 350 (1987). The exhaustion doctrine does not apply, however, when the principles underlying it are not present and the administrative claim and the legal claim are independent of each other.[5] This, we think, is a case in which it makes no sense in the interest either of judicial economy or legislative policy to delay adjudication until the administrative process has been completed.

Even though the same change in Ludlow's employee health care plan precipitated both the judicial and administrative proceedings, they are separate and distinct. The present case, whether or not the plaintiffs ultimately prevail, involves only the statutory rights of town employees. In addition to the union, an individual firefighter is suing on behalf of a class of employees similarly situated. The administrative proceeding, on the other hand, involves only the town's actions in conducting its labor relations, and the only complainant is the union. Contending that the two proceedings are not distinct, the town relies on a reference to collective bargaining agreements in St. 1988, c. 23, § 77A, one of the two statutes on which the plaintiffs' claim in this case is based. The statute provides for an exception to the prohibition against rate increases if the parties to a collective bargaining agreement have negotiated about such rate increases and accepted them. There is no contention that the Ludlow firefighters ever agreed to pay the increased rates challenged in this case or that bargaining ever preceded institution of the new health plan. Whether the town's interpretation of the reference in the statute to collective bargaining is correct or not is a question to be resolved in the present case.[6]

Only questions of law are involved in the present case, not disputed facts. Moreover, there is no issue relating to the conduct of labor relations or the interpretation of a collective bargaining agreement which might be appropriate for exercise in the first instance of the commission's expertise. Compare *St. Luke's Hosp.* v. *Labor Relations Commn.*, 320 Mass. at 470; *Murphy* v. *Administrator of the Div. of Personnel Admn.*, 377 Mass. at 222; *Kartell* v. *Blue Shield of Mass., Inc.*, 384 Mass. 409, 413 (1981); *School Comm. of Greenfield* v. *Greenfield Educ. Assn.*, 385 Mass. 70, 76 (1982). Contrast *Buteau* v. *Norfolk County Retirement Bd.*, 8 Mass. App. Ct. 391, 394-395 (1979). Nor is it likely that an administrative remedy, in the event of a finding that the town failed to bargain in good faith, would

---

[5]Principles similar to those underlying the exhaustion doctrine apply in cases in which no administrative proceeding has been brought but the issue of primary jurisdiction is raised. See *Murphy* v. *Administrator of the Div. of Personnel Admn.*, 377 Mass. 217, 221 (1979).

[6]The identical issues of law are involved in a case brought by the Ludlow teachers union, together with an employee representing a class, decided in the Superior Court in favor of the employees and presently pending in the Appeals Court. Ludlow Educ. Assn. *vs.* Ludlow, No. 89-P-1364 (filed December 1, 1989). Upon remand of this case to the Superior Court, a stay to await a decision in that appeal would be appropriate.

be adequate. Although the commission would have discretion to award compensatory relief for past overpayments to the individual firefighters, the principal administrative remedy would be an order to bargain over the health care plan. See G. L. c. 150E, § 11. Should an impasse be reached after bargaining, the town would be free to implement the change unilaterally. See G. L. c. 150E, § 9; *School Comm. of Newton* v. *Labor Relations Commn.*, 388 Mass. 557, 574 (1983). If the plaintiffs should prevail in this proceeding, on the other hand, they would have the opportunity to obtain compensation and a permanent injunction adequately protecting their statutory rights.

Accordingly, we vacate the judgment of dismissal and remand the case to the Superior Court for further proceedings.

*So ordered.*

*Harold L. Lichten* for the plaintiffs.
*Alice E. Zaft* for the Board of Selectmen of Ludlow.